IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| In the Matter of E.W., by and through his parent, L.W.,<br><br>　　　　　Plaintiffs/<br>　　　　　Counterclaim Defendants,<br><br>　vs.<br><br>DEPARTMENT OF EDUCATION, STATE OF HAWAII and KEITH HAYASHI, Superintendent of the Hawaii Public Schools,<br><br>　　　　　Defendants/<br>　　　　　Counterclaimants. | CIV. NO. 21-00486 JMS-WRP<br><br>ORDER AFFIRMING ADMINISTRATIVE HEARINGS OFFICER'S STAY-PUT ORDER, AND FINDINGS OF FACT AND CONCLUSIONS OF LAW IN DOE-SY2021-046 |

## ORDER AFFIRMING ADMINISTRATIVE HEARINGS OFFICER'S STAY-PUT ORDER, AND FINDINGS OF FACT AND CONCLUSIONS OF LAW IN DOE-SY2021-046

### I.　INTRODUCTION

There are two matters before this court.

First, E.W. ("Student"), through L.W. ("Parent") (collectively "Plaintiffs"), challenges a November 2021 Administrative Hearings Officer's ("AHO") Findings of Fact, Conclusions of Law and Decision ("2021 Decision"), ECF No. 10-24, which held that a May 2021 Individualized Education Program ("IEP"), ECF No. 10-9, developed by Department of Education, the State of Hawaii, and Keith Hayashi, in his official capacity as Superintendent of Hawaii

Public Schools (collectively, "Defendants" or "DOE"), offered Student a Free Appropriate Public Education ("FAPE") under the Individuals with Disabilities Education Act, 20 U.S.C. § 1400 *et seq.* ("IDEA").  *See* ECF No. 39.  The AHO determined that Plaintiffs failed to demonstrate a denial of FAPE and that Defendants met their duty to comply with the IDEA's mandates.  Because the court agrees, the AHO 2021 Decision is AFFIRMED.

Second, Defendants counterclaim that the AHO's July 2021 Order Granting Petitioner's Motion for Stay-Put ("Stay-Put Order"), ECF No. 10-10, requires reversal.  *See* ECF No. 42 at PageID.1198–1205.  Specifically, they argue that for purposes of the Stay-Put Order, the AHO erroneously classified Pono Academy and Center ("PAC") as that Student's "current educational placement" in her earlier November 2020 Findings of Fact, Conclusions of Law and Decision ("2020 Decision"), ECF No. 10-7.  Because the court agrees with the AHO's analysis on Student's current educational placement, the Stay-Put Order is also AFFIRMED.

## II. <u>BACKGROUND</u>

It is undisputed that Student qualifies as a "child with a disability" for purposes of 20 U.S.C. § 1401(3)(A).  He is currently eight years old and has been determined eligible for IDEA special education and related services under a diagnosis for autism spectrum disorder ("ASD").  ECF No. 12-1 at PageID.506.

2

Student attends PAC, a private school for children with special needs.  PAC

utilizes the Verbal Behavior Milestones Assessment and Placement Program

("VB-MAPP") as the primary basis for creating educational programming for its

students.

Under 20 U.S.C. § 1415(i)(2), Plaintiffs challenge AHO Chastity T.

Imamura's November 9, 2021 56-page Decision ("2021 Decision"), ECF No. 10-

24.  In the counterclaim, Defendants challenge the AHO's November 19, 2020

45-page Decision ("2020 Decision").  Both decisions were comprehensive,

thorough, and careful.  Additionally, the court independently reviewed the record

on appeal and found the AHO's factual determinations worthy of considerable

deference.  *See, e.g.*, *Capistrano Unified Sch. Dist. v. Wartenberg*, 59 F.3d 884,

891 (9th Cir. 1995).

## A.     Events Surrounding 2020 Decision[1]

Defendants' motion for reversal of the July 2021 Stay-Put Order, ECF

No. 10-10, is informed by the AHO's 2020 Decision.  The court focuses on the

findings of the 2020 Decision to understand whether PAC is the appropriate

educational placement for purposes of the Stay-Put Order.  ECF No. 10-10 at

---

[1] ECF No. 10-7 at PageID.77–121.  The bulleted event summary is supported by the Administrative Record and explained in detail by the AHO in her 2020 Decision, DOE-SY1920-053.  *Id.*

PageID.232–240.  Below is a brief timeline of events surrounding the AHO's 2020

Decision:

- 10/02/2018—IEP Development Meeting

  - Student was attending public school at this time.

  - Parent did not object to or reject the IEP.

- 05/16/2019—IEP Revision Meeting

  - Parent was issued a Prior Written Notice ("PWN").

  - Student stopped attending public school after this date.

- 07/01–31/2019—Parent unilaterally enrolled Student in a "Pilot Program" for the School Year ("SY") 2019-2020

  - Parent paid a discounted rate of $5,859.40 for tuition.

  - Parent did not notify public school of withdrawal.

- 10/02/2019—IEP Annual Review Date

  - Date lapsed and no IEP completed for Student.

  - Expired IEP led to a denial of FAPE for Student.

- 11/19/2020—AHO Decision in DOE-SY1920-053

  - Pilot Program became Pono Academy Center ("PAC").

  - AHO granted tuition reimbursement of $231,186.80 at PAC for SY 2020–2021 due to DOE's failure to create a new IEP before its expiration date of 10/02/2019.

4

    ○ AHO found that PAC was an "appropriate placement"

     for Student, deserving of reimbursement.

**B. Events Surrounding 2021 Decision[2]**

    While Student's tuition and fees were being paid by DOE for the SY

2020-2021, Student was enrolled at PAC.  Defendants met with Parent in the

beginning of 2021 to start developing Student's IEP.  The final version of that

IEP is dated May 12, 2021.  ECF No. 10-9.  In developing the IEP, Defendants

offered a plan for a FAPE in a public education setting and recommended

transitioning Student out of PAC for the following school year.  The AHO, in her

2021 Decision, found that the proposed IEP offered a FAPE.  Below are the

factual circumstances underlying the AHO's 2021 Decision which is at the heart

of Plaintiffs' complaint:

    • 12/09/20—Speech language assessment, finding that:

     ○ Student uses verbal language and no longer needed

      assistive communicative devices (i.e., picture exchange

      system, voice outputs, or sign language).

    • 12/17–18/20—Occupational therapy ("OT") assessment:

---

[2] ECF No. 10-24 at PageID.387–404.  The bulleted event summary is supported by the Administrative Record and explained in detail by the AHO in her 2021 Decision, DOE-SY2021-046.  *Id.*

- o Student was not receiving OT at PAC but received it previously from ages 2–3, and Student demonstrated moderate difficulties in visual motor integration and coordination and misses sensory input cues.

- 12/18/20—Psycho-educational assessment, finding that:
  - o Student needed support for general development in physical, adaptive behavior, social-emotional, cognition, and communication domains.

- 01/05/21—VB-MAPP assessment, finding that:
  - o Student reached all his milestones in level 1, half the milestones in level 2, and some milestones in level 3, with an overall score of 93.
  - o Student showed low-level barriers in many domains and the highest barriers in the impaired intraverbal domain, with an overall score of 32.

- 01/20/21—IEP Meeting
  - o Participants included:
    - ▪ Parent
    - ▪ Principal
    - ▪ Private Board-Certified Behavioral Analyst

("BCBA")

- DOE BCBA

- DOE Speech Language Pathologist ("SLP")

- DOE OT

- Special Education Teacher

- General Education Teacher

- Autism Specialist

o Meeting discussion included:

- Then present-level of educational performance

- Areas of achievement and improvement

- Draft IEP, section by section

- Parents concerns and observations

- 02/04/21—IEP Meeting

o Participants were the same as in the 01/21/21 meeting.

o Meeting discussion included:

- Revised IEP based on initial 01/21/21 discussion

- Continued review of IEP, section by section

- Principal's input on advancing grade level

- Speech language and occupational therapy goals

- Goals for improving social skills and behavior

7

- Qualification for Extended School Year ("ESY") services after a 10-day break without support

- Supplementary supports during SY and ESY

- 600 minutes/week of special education services

- 480 minutes/quarter of speech language therapy

- 240 minutes/quarter of occupational therapy

- Transportation services which Parent declined

- BCBA services and Parent's Registered Behavioral Technician ("RBT") request

- Supplementary aids and sensory supports

- "Least Restrictive Environment" ("LRE") in general education versus private school

- Parent's child safety concerns and supervision

- Transition plan by private school teachers

- 02/09/2021—PWN sent to Parent, summarizing discussions held at 01/20 & 02/04/21 meetings.

- 02/11/2021—Parent informed Principal that she required behavioral testing before agreeing to an IEP, FAPE offer.

- 04/01–30/21—Functional Behavioral Assessment ("FBA")
    - Found that student's IEP must include Applied

Behavioral Analysis ("ABA") services to address his "frustration" issues when accessing education.

- 05/10/21—Parent sent email to Principal requesting DOE payment in private school if IEP cannot be implemented.
- 05/11/21—Principal responded to Parent's inquiries.
- 05/12/21—IEP Meeting & IEP Offer of FAPE
  - Participants were the same as those in the 01/21/21 and 02/04/21 meetings, plus a Behavior Health Specialist.
  - Meeting discussion included:
    - Review of Student's Present Levels of Educational Performance ("PLEP")
    - Incorporating FBA recommendations into IEP
    - Q&A with Private PCBA on behavioral goals
    - Including RBT services with BCBA supervision
    - Including Individual Instructional Support
    - Parent's concerns about transition
- 05/12/21—Meeting to incorporate FBA results into Behavioral Intervention Plan ("BIP") via:
  - Environmental modifications, crisis plan, antecedent manipulations, teaching methods to support Student.

9

- 05/14/21—PWN sent with reasons for IEP decisions.

- 05/19/21—Transition meeting, including discussions on:

  o Pairing DOE staff with future school staff

  o Pairing of Student's favorite objects and activities

  o Priming methods to help with environmental changes

  o Parent's questions and concerns

- 06/02/2021—An Individualized Applied Behavioral Analysis Education Program ("IAEP"), which incorporated objectives similar to those in the 05/12/21 IEP, was developed for Student's SY 2020–2021 and SY 2021–2022.

- 06/22/21—Parent signed private school enrollment contract; refused to accept IEP offer of FAPE from DOE.

## C.   Procedural Background[3]

While Student's tuition and fees were being paid by DOE for the SY 2020–2021, Student remained enrolled at PAC.  Defendants met to develop an IEP suitable for Student in the hopes to transfer Student to a public educational institution for the SY 2021–2022.  However, pending litigation—concerning the issues on appeal before this court—has prevented Student's transfer and DOE

---

[3]  ECF No. 10-24 at PageID.387-404.  The bulleted event summary is explained in detail by the AHO in her 2021 Decision, DOE-SY2021-046.  *Id.*

has continued to pay Student's tuition and fees under the Stay-Put Order.  Below

is the procedural background regarding Plaintiffs' claim and Defendants'

counterclaims:

- 06/03/21—Plaintiffs filed a due process Complaint.

- 06/10/21—Defendants responded to the Complaint.

- 06/30/21—Due process prehearing conference before AHO.

- 07/02/21—Plaintiffs filed Motion for Stay-Put.

- 07/08/21—Defendants responded to Stay-Put Motion.

- 07/12/21—Plaintiffs replied to Stay-Put Response.

- 07/16/21—AHO granted Stay-Put (DOE-SY2021-046).

- 08/30-31/21—Due Process Hearing.  Attendees:
  - AHO
  - Plaintiffs
  - Plaintiffs' Counsel, Mr. Peck
  - DOE Education Specialist
  - Defendants' Counsel, Mr. Fujioka
  - Private Board-Certified Behavioral Analyst
  - DOE Board-Certified Behavioral Analyst

- 09/07/21—Due Process Hearing continued with Principal.

- 09/08/21—AHO granted Motion to Dismiss on ESY issue.

- 10/15/21—Parties submitted closing briefs.

- 11/09/21—AHO affirmed IEP (DOE-SY2021-046).

## III.  <u>STANDARD OF REVIEW</u>

Under the IDEA, "[a]ny party aggrieved by the findings and

decision" of the hearings officer "shall have the right to bring a civil action with

respect to the complaint presented pursuant to this section . . . ." <u>20 U.S.C.</u>

<u>§ 1415(i)(2)(A)</u>.  The IDEA provides that the court shall receive the records of the

administrative proceedings,

> (i)   shall hear additional evidence at the request of a party; and
> (ii)  basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate.

<u>20 U.S.C. § 1415(i)(2)(C)</u>.  *Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist. v.*

*Rowley*, <u>458 U.S. 176, 206–07</u> (1982), explains the court's role in reviewing an

administrative decision in an IDEA case:

> [T]he provision that a reviewing court base its decision
> on the "preponderance of the evidence" is by no means
> an invitation to the courts to substitute their own notions
> of sound educational policy for those of the school
> authorities which they review.  The fact that
> § [1415(i)] requires that the reviewing court "receive the
> records of the [state] administrative proceedings" carries
> with it the implied requirement that due weight shall be
> given to these proceedings.  And we find nothing in the
> Act to suggest that merely because Congress was rather
> sketchy in establishing substantive requirements, as

12

> opposed to procedural requirements for the preparation
> of an IEP, it intended that reviewing courts should have
> a free hand to impose substantive standards of review
> which cannot be derived from the Act itself.  In short,
> the statutory authorization to grant "such relief as the
> court determines is appropriate" cannot be read without
> reference to the obligations, largely procedural in
> nature, which are imposed upon recipient States by
> Congress.

*See also City of Chicago v. Int'l Coll. of Surgeons*, <u>522 U.S. 156, 171</u> (1997)

(citing *Rowley*, 458 U.S. at 207, for the proposition that the IDEA "contemplates

deferential review of state administrative action").  The "fact-intensive nature" of

the IDEA proceedings "coupled with considerations of judicial economy render a

more deferential approach appropriate."  *Hood v. Encinitas Union Sch. Dist.*, <u>486</u>

<u>F.3d 1099, 1104</u> n.4 (9th Cir. 2007).

Despite this deferential approach, the court has discretion in

reviewing the hearings officer's decision:

> The proposition that the courts must give "due weight"
> raises the question of how much weight is "due."  We
> held in *Gregory K. v. Longview Sch. Dist.*, <u>811 F.2d</u>
> <u>1307, 1311</u> (9th Cir. 1987), that "[h]ow *much* deference
> to give state educational agencies . . . is a matter for the
> discretion of the courts." . . . [W]e held in *Gregory K.*
> that the courts are to consider the findings "carefully and
> endeavor to respond to the hearing officer's resolution of
> each material issue," but the court "is free to accept or
> reject the findings in part or in whole."  *Id.*

"When exercising [the court's] discretion to determine what weight to

give the hearing officer's findings, one criterion . . . is to examine the thoroughness of those findings.  The amount of deference accorded [to] the hearing officer's findings increases where they are 'thorough and careful.'"  *Wartenberg*, 59 F.3d at 891 (alterations in original) (citations omitted); *see also, e.g.*, *J.W. ex rel. J.E.W. v. Fresno Unified Sch. Dist.*, 626 F.3d 431, 438 (9th Cir. 2010) ("This Court gives deference to [a Hearings Officer's] decision 'when it evinces his or her careful, impartial consideration of all the evidence and demonstrates his or her sensitivity to the complexity of the issues presented.'") (quoting *Cnty. of San Diego v. Cal. Special Educ. Hrg. Off.*, 93 F.3d 1458, 1466 (9th Cir. 1996) (internal editorial marks omitted)).

Where a hearings officer's decision contains some findings that are "thorough and careful," and others that are not, the court can give deference to the thorough and careful findings and yet review other findings independently. *See R.B., ex rel. F.B. v. Napa Valley Unified Sch. Dist.*, 496 F.3d 932, 943 (9th Cir. 2007) ("[W]e accord particular deference to the [hearings officer's] 'thorough and careful' findings . . . although we independently review the testimony in the record that [she] failed to consider.").

The burden of proof in this IDEA proceeding is on Plaintiffs—the party challenging the administrative ruling—to demonstrate Student was denied a

FAPE.  *Schaffer ex rel. Schaffer v. Weast*, 546 U.S. 49, 62 (2005); *see also J.W.*,

626 F.3d at 438.

## IV.  DISCUSSION

The court first sets forth the applicable legal framework, and then

addresses whether the AHO erred in determining that Student's 05/12/2021 IEP

was a FAPE or in granting the Stay-Put Order.

### A.    Legal Framework

A basic three-step analysis applies in determining whether a

violation of the IDEA denies a qualified disabled student a FAPE.

First, the court asks whether the school district violated the IDEA,

either "procedurally" or "substantively."  *Rowley*, 458 U.S. at 206–07.  A school

district may violate the IDEA's statutory or regulatory procedures in creating or

implementing (or failing to create or implement) an IEP.  *Id.*  Or a school

district may violate the IDEA substantively by offering an IEP that is not

reasonably calculated to enable the child to receive educational benefit.  *Id.*  The

school district must provide the student with a FAPE that is "appropriately

designed and implemented so as to convey" to the student a "meaningful"

benefit.  *J.W.*, 626 F.3d at 433 (quoting *Adams v. State of Oregon*, 195 F.3d

1141, 1149 (9th Cir. 1999)).

Second, if the court finds a violation of the IDEA's procedures, the

court addresses whether that violation denied that student a FAPE—for not all

procedural violations are actionable.  *See, e.g.*, *L.M. v. Capistrano Unified Sch.*

*Dist.*, 556 F.3d 900, 909 (9th Cir. 2008).  Furthermore, a hearings officer may only

find denial of a FAPE in matters involving procedural violations under certain

circumstances:

> In matters alleging a procedural violation, a hearing
> officer may find that a child did not receive a free
> appropriate public education only if the procedural
> inadequacies—
>
> I.     impeded the child's right to a free appropriate
>       public education;
> II.    significantly impeded the parents' opportunity
>       to participate in the decisionmaking process
>       regarding the provision of a free appropriate
>       public education to the parents' child; or
> III.   caused a deprivation of educational benefits.

20 U.S.C. § 1415(f)(3)(E)(ii).

To be actionable, the procedural violation must result in the "loss of

[an] educational opportunity, or seriously infringe the parents' opportunity to

participate in the IEP formulation process."  *L.M.*, 556 F.3d at 909 (citation and

quotation marks omitted).  That is, "where a procedural violation does not result in

a lost educational opportunity for the student, the violation is 'harmless error'

because it does not deny the student a FAPE."  *R.B.*, 496 F.3d at 938 n.4 (citation

omitted).

The third stage is the remedy—and this stage itself includes several steps. If an IDEA violation results in denial of a FAPE, a district court has discretion to "grant such relief as the court determines is appropriate." 20 U.S.C. § 1415(i)(2)(C)(iii). Such relief could include reimbursement for a private placement. *See* 20 U.S.C. § 1412(a)(10)(C)(ii); *Sch. Comm. of Burlington v. Dep't of Educ. of Mass.*, 471 U.S. 359, 370 (1985). The parent or guardian, however, must also establish that the particular private placement is itself "appropriate." *See, e.g.*, *Ashland Sch. Dist. v. Parents of Student E.H.*, 587 F.3d 1175, 1183 (9th Cir. 2009).

Lastly, "[t]he standard for evaluating IEPs, commonly called the 'snapshot rule,' is not retrospective," *J.W.*, 626 F.3d at 439 (citing *Adams*, 195 F.3d at 1149):

> We do not judge an [IEP] in hindsight; rather, we look to the [IEP's] goals and goal achieving methods at the time the plan was implemented and ask whether these methods were reasonably calculated to confer [Student] with a meaningful benefit . . . In striving for "appropriateness," an IEP must take into account what was, and what was not, objectively reasonable when the snapshot was taken, that is at the time the IEP was drafted.

*Id.* (quoting *Adams*, 195 F.3d at 1149).

**B.**     **Application**

Plaintiffs' appeal focuses on procedural and substantive violations associated with the May 12, 2021 IEP.

### 1.     *Issue 1—Mainstreaming Violation for Extended School Year ("ESY") Services*

Plaintiffs argue that Defendants engaged in a "procedural denial of a FAPE" when failing to discuss Student's access to non-disabled peers in the ESY portion of the IEP.  ECF No. 39 at PageID.1150.  Specifically, Plaintiffs argue that a discussion of placing Student in the least restrictive environment not only during the school year, but specifically for ESY services, was required under the law.  *Id.* at PageID.1151.

ESY service is "educational instruction beyond the normal academic year provided to students who need the additional instruction to retain information during a break in regularly scheduled classes, such as during the summer." *Dep't of Educ. v. L.S. ex rel. C.S.*, 2019 WL 1421752, at *7 (D. Hawaii 2019).  Providing ESY services is the exception, not the rule.  *N.B. v. Hellgate Elementary Sch. Dist. ex Rel. Bd. of Dirs., Missoula Cty. Mont.*, 541 F.3d 1202, 1211 (9th Cir. 2008). ESY services are required only when the IEP team determines that ESY services are necessary to provide a FAPE.  *Id.*

Under the principle of "mainstreaming," the IDEA requires

educating disabled students, to the "maximum extent appropriate," with nondisabled students. 20 U.S.C. § 1412(a)(5)(A). "While every effort is to be made to place a student in the [LRE], it must be the [LRE] which also meets the child's IEP goals." *Cnty. of San Diego v. Cal. Special Educ. Hearing Office*, 93 F.3d 1458, 1468 (9th Cir. 1996).

Plaintiffs cite, as persuasive authority, the following excerpt of a letter from the Office of Special Education Programs ("OSEP")[4] letter, which discusses the intersection of ESY services and mainstreaming:

> Least restrictive environment requirements do apply when an IEP is developed for extended school year [ESY] services. School districts do not have to establish public programs for students without disabilities for the sole purpose of being able to implement the least

---

[4] OSEP is housed under the United States Department of Education's Office of Special Education and Rehabilitative Services, and below is an overview of its functioning:

> [OSEP] is dedicated to improving results for infants, toddlers, children and youth with disabilities ages birth through 21 by providing leadership and financial support to assist states and local districts.
>
> The Individuals with Disabilities Education Act of 2004 (IDEA) authorizes formula grants to states and discretionary grants to institutions of higher education and other non-profit organizations to support research, demonstrations, technology and personnel development and parent-training and information centers.
>
> Discretionary grants are grants awarded through a competitive process and OSEP maintains a listing of new discretionary funding opportunities.

*See* Welcome to OSEP, https://www2.ed.gov/about/offices/list/osers/osep/index.html (last visited March 29, 2023).

> restrictive environment provision for children with
> disabilities who require an extended year program.
> However, a school district must meet the least restrictive
> environment requirement by alternative means, such as
> private placements, when it is determined that a student
> with a disability must have interaction with students
> without disabilities.

Letter to Myers, 213 EHLR 225 (OSEP letter dated August 30, 1989).  Preceding

this passage, however, the OSEP letter also states the following general

principles on ESY services:

> It is reasonable that an IEP developed for an extended
> school year program will differ from the IEP developed
> for the student's regular school program.  It is also
> reasonable for an extended school year IEP to
> concentrate on the areas in which the child may
> experience regression or on the skills or programs that
> are not academic but are needed so that regression does
> not occur in academics.

Viewed in this context, the May 12, 2021 IEP was reasonable.  It

offered a plan that was "appropriately designed and implemented so as to convey"

to Student a "meaningful" benefit.  *J.W. ex rel. J.E.W.*, 626 F.3d at 433.

There is no dispute that the IEP team determined that Student

qualified for ESY services, after a ten calendar-day break from school.  ECF No.

10-24 at PageID.396.  The Plaintiffs, however, dispute that there should have

been explicit conversations on student's access to non-disabled students during

the ESY services portion of the IEP negotiation.  ECF No. 39 at PageID.1147.

The parties provided, and the court reviewed, the Zoom recordings of the meetings preceding the finalized 05/12/2021 IEP offer.  These meetings included a discussion of mainstreaming Student to access non-disabled students.  Specifically, during the 02/04/2021 IEP meeting [timestamp from 34:41–55:43], the IEP team made clear that they would be discussing both SY and ESY services *together*.  *See also* ECF No. 10-24 at PageID.396–398.  During that time, Parent asked about Student's mainstreaming, and the IEP team responded that Student would have access to general education students.  It appears that this access would continue into the ESY, particularly because the Principal offered—and the Parent accepted—for the student to be enrolled in ESY for the entire school day, 8:00 a.m. to 12:00 p.m.[5]  *Id.* at PageID.397.  Accordingly, there is no violation in the offering of ESY services.

To the extent that Plaintiffs argue that the mainstreaming conversation as to ESY and SY services should have been bifurcated and made explicit in the context of the ESY services, there is no such specific requirement in the law.  Discussing mainstreaming in the context of both SY and ESY services is reasonable.  And even if there had been a procedural violation of some sort,

---

[5]  During oral argument in this case, the parties were asked if the 8:00 a.m. to 12:00 p.m. ESY program included access to non-disabled students, but neither party could confirm this fact.  ECF No. 49.  Because the record only accounts for a few hours every day of special education during ESY, it appears that the remaining hours would include access to non-disabled children who attend the public school.

which is currently unsupported by the facts and the law, there is no evidence that such a violation led to the denial of a FAPE.

### 2. Issue 2—Behavioral Intervention Plan

Plaintiffs argue that the omission of the BIP from the IEP was a procedural violation, resulting in a substantive denial of FAPE.  ECF No. 39 at PageID.1153.  While Plaintiffs acknowledge that a BIP was created, they claim that its non-incorporation into the IEP would allow the BIP to "be changed outside of the IEP process and protections," potentially resulting in Student not receiving adequate behavioral supports needed to acquire a FAPE.  *Id.*

A BIP is a document developed by a Board-Certified Behavioral Analyst who is licensed in the State of Hawaii.  H.A.R. § 465D-4.  Following the completion of a Functional Behavioral Assessment ("FBA"), the Registered Behavioral Technician ("RBT") implements the BIP—with the supervision of the BCBA—to ensure that Student benefits from the BIP-crafted behavioral interventions.  ECF No. 10-24 at PageID.425.

Indeed, parent participation is critical to acquiring input, defining, and determining solutions to a student's behavioral struggles.  The Ninth Circuit has stressed the importance of parent participation, particularly for procedural purposes:

> Echoing the Supreme Court, we have held that parental participation safeguards are "[a]mong the most important procedural safeguards" in the IDEA and that "[p]rocedural violations that interfere with parental participation in the IEP formulation process undermine the very essence of the IDEA."  We have explained that parental participation is key to the operation of the IDEA for two reasons: "Parents not only represent the best interests of their child in the IEP development process, they also provide information about the child critical to developing a comprehensive IEP and which only they are in a position to know."

*Doug C. v. Haw. Dep't of Educ.*, 720 F.3d 1038, 1044 (9th Cir. 2013) (internal citations omitted).

In support of their position, Plaintiffs primarily rely on *DOE v. L.S. ex rel. C.S.*, 2019 WL 1421752 (D. Haw. 2019), in which the court found a FAPE denial when the support team did not incorporate necessary behavioral interventions into the IEP.  Procedurally, the DOE in *L.S.* had failed to send the parent a behavioral support plan ("BSP"), ultimately depriving the parent of her right to meaningful participation.  *Id.* at *12.  As a result, the district judge determined that, "this case demonstrates the need for parent participation, because had Parent seen the BSP, she may have objected to the fact that significant portions of the BSP were not completed." *Id.*

Here, unlike *L.S.*, parental participation existed and indeed helped to shape the behavioral supports for the Student's IEP.  Student's 05/12/2021 IEP included several behavioral supports and interventions in the supplementary aids

and supports section, which were based upon Student's needs. ECF No. 10-9 at

PageID.225–26. For example, Student's supplementary aids and supports included

daily sensory supports, visual supports, priming before transitions and non-

preferred activities, the use of first/then language, and the use of a token economy.

*Id.* Furthermore, these behavioral supports were not unilaterally chosen by

Defendants for Student; the record shows that Parent participated and conveyed her

"input and concerns" as to Student's behavioral needs. *Id.* at PageID.209.

And although the IEP did not fully incorporate the BIP, the AHO

explained that contrary to Plaintiff's argument—that the segregated BIP lacks the

procedural fortresses which an IEP carries—the BIP, by law, "cannot be amended

or curtailed without the Parent's knowledge and input." ECF No. 10-24 at

PageID.425–26 (citing internally to H.A.R. § 8-60-31(c)(1)). This is yet another

distinction from *L.S.*, which analyzed the failure to incorporate a BSP, not a BIP.

Further, a BIP is not required by the law in this case. The Ninth

Circuit has found that a BIP is only required if the student's behavioral problems

are so severe that they "cause harm or serious threat of harm to persons or

property." *Rodriguez v. San Mateo Union High Sch. Dist.*, 357 F. App'x 752,

753–54 (9th Cir. 2009). There is no evidence in the record to support the assertion

that Student's behavioral issues were similarly severe, and the non-severity of

Student's behavioral problems was confirmed at oral argument.  ECF No. 49.

Accordingly, a BIP was not legally required for this Student.

Even still, Defendants not only incorporated a number of behavioral

interventions into the IEP, they also created and implemented a separate BIP for

student.  ECF No. 10-3 at PageID.42.  As explained by the AHO and undisputed

by the parties, "[p]arent was provided the BIP, each component of the BIP was

explained by Private BCBA to Parent, and an RBT was assigned to Student in the

IEP-05/12/2021 to implement the IEP throughout Student's school day."   ECF

No. 10-24 at PageID.426.  Accordingly, Plaintiffs have failed to show that the full

incorporation of the BIP into the IEP was necessary as a matter of law or that the

failure to incorporate the BIP into the IEP resulted in the denial of a FAPE.

### 3.    *Issue 3—Transition Needs*

Plaintiffs argue that the 05/12/2021 IEP fails to adequately address the

transitional needs of Student from private school to public school.  ECF No. 39 at

PageID.1153.  Plaintiffs also argue that the transition meeting which DOE hosted

for Student was "required to occur during the IEP development process."  *Id.* at

PageID.1155 (citing internally to 34 C.F.R. § 300.l 16(d) ("In selecting the LRE,

consideration is given to any potential harmful effect on the child or on the quality

of services that he or she needs")).

Yet, courts in this district have found many times that the IDEA does not require an IEP to address transition services. *See Carrie I. ex rel. Greg I. v. Hawaii, Dep't of Educ.*, 869 F. Supp. 2d 1225 (D. Haw. 2012) (explaining that a claim based on an IEP's lack of a transition plan fails as a matter of law); *Hawaii, Dep't of Educ. v. C.B. ex rel. Donna B.*, 2012 WL 1537454, at *5 (D. Haw. May 1, 2012) ("as previously stated by this court, the DOE is not required to include a transition plan in an IEP whenever a child moves from a private institution to a public school"); *James M. ex rel. Sherry M. v. Hawaii*, 803 F. Supp. 2d 1150, 1164 (D. Haw. 2011) ("This Court has previously held that while 'the IDEA requires an IEP to have a statement of needed transition services in some circumstances, the statutory provision of the IDEA specifically addressing transition services does not mandate such services when a transition from private to public school takes place.'").

This court has made clear in a previous decision regarding transition services:

> As explained by *C.B. ex rel. Donna B.*, the IDEA, 20 U.S.C. § 1414(d)(1)(A)(i), "clearly requires an IEP to include a number of matters, such as a statement of the child's present level of achievement and measurable goals." 2012 WL 1537454, at *5. Nowhere in these stated requirements does the IDEA provide "that an IEP include a transition plan when a child moves from a private facility to a public school." *Id.* Given that the IDEA explicitly provides that section outlining the requirements of an IEP shall not "be construed to require . . . that additional information be included in a child's IEP beyond what is

> explicitly required in this section," 20 U.S.C. §
> 1414(d)(1)(A)(ii), this omission is meaningful— a transition
> plan is not required to be a part of an IEP. *Id.*

*Donna S. v. Hawaii*, 2012 WL 4017449 (D. Haw. Sept. 12, 2012).

Despite this non-requirement for transition services to be made explicit in the IEP, Student's IEP nevertheless provided supplementary aids and supports to assist with Student's transition into Home School from Private School, including frequent meetings of the IEP team to check on Student's transition status, ABA services for Student by a BCBA, and an RBT assigned to Student to address any needs or issues that may arise. *See* ECF No. 10-9.

Plaintiffs further acknowledge that "Defendant did arrange an after-the-fact, non-IEP transition plan meeting to hear Parent's concerns." ECF No. 39 at PageID.1155. This non-IEP transition meeting further evidences the DOE's intention to sincerely support Student's transitional needs, despite no legal requirement to do so. Accordingly, there was no procedural or substantive violation as to Student's transition needs that resulted in a denial of a FAPE.

### 4.   *Issue 4—Stay-Put Reversal*

The IDEA provides, in pertinent part, that "during the pendency of any proceedings conducted pursuant to this section, unless the State or local educational agency and the parents otherwise agree, the student shall remain in the

then-current educational placement of the child . . . ." 20 U.S.C. § 1415(j); H.A.R.

§ 8-60-72(a).  This is known as the stay-put provision.

Under the IDEA, "the stay put provision acts as a powerful protective

measure to prevent disruption of the child's education throughout the dispute

process," and "if the parents and the school district do not agree on a child's

placement, then the parents can keep their child in his current placement until the

dispute is finally resolved." *E.E. by and through Hutchinson-Escobedo v. Norris*

*Sch. Dist.*, 4 F.4th 866, 874 (9th Cir. 2021) (citing *Joshua A*., 559 F.3d at 1040; 20

U.S.C. § 1415(j); 34 C.F.R. § 300.518(a)).

Defendants argue that Plaintiffs should not be reimbursed for private

educational services, because PAC should not be Student's current educational

placement for stay-put purposes.  *See* ECF No. 42 at PageID.1198–1205.

Specifically, Defendants argue that "reimbursement is not placement," and that the

AHO's 2020 Decision is a "reimbursement order" which did not properly delineate

Student's placement at PAC, because the 2020 Decision lacked a discussion as to

the Student's LRE.  *Id.* at PageID.1201.

By way of background, the crux of Defendants' stay-put claim relates

to the findings of fact in the AHO's 2020 Decision.  ECF No. 10-7 at PageID.84–

104.  In those facts, the AHO explains that Student began attending a public

school, which she calls "Home School," in October 2018.  *Id.* at PageID.90.  On

28

October 2, 2018, an IEP was finalized for Student, and Parent "did not object to nor reject the IEP-10/02/2018." *Id.* However, in the summer of 2019, Parent unilaterally enrolled Student in a Pilot Program, which was run by the "Private School," PAC. *Id.* at PageID.96. Parent paid out-of-pocket for the SY 2019–2020 expenses. *Id.* at PageID.98. While Student was enrolled at PAC, Defendants failed to review, revise, and replace the 10/02/2018 IEP before its expiration on 10/02/2019, resulting in a denial of a FAPE. *Id.* at PageID.113. To remedy this denial, the AHO awarded Plaintiffs' reimbursement for their tuition and fees for SY 2020–2021 at PAC. *Id.* at 116-117. Underlying that award was a rigorous finding that PAC offered Student a FAPE and constituted the "appropriate placement" for Student. *Id.* at 113–21. Given this finding in her 2020 Decision, the AHO further held—in her July 2021 Stay-Put Order—that PAC is Student's "current educational placement" for purposes of stay-put. ECF No. 10-10.

Defendants cite to cases which demonstrate that an institution for reimbursement purposes may differ from the current educational "placement*"* for stay-put purposes. *See Greenberg v. Dep't of Educ., Hawaii,* 2022 WL 2982514, at * 4 (D. Haw. July 27, 2022) (stating that a student's current enrollment is not the determining factor in assessing the appropriate stay-put placement of a student, because if that were the case, parents could ignore an established IEP and keep a child enrolled in a desired school until litigation concludes); *L.M. Capistrano*

29

*Unified Sch. Dist.*, 556 F.3d at 911 (standing for the proposition that the court or agency below must expressly deem the private placement appropriate); *Zvi D. by Shirley D. v. Ambach*, 694 F.2d 904, 908 (2d Cir. 1982) ("Payment and placement are two different matters.").

      In adherence to case law, however, the AHO properly found—in its 2020 Decision—that PAC was not only appropriate for reimbursement purposes, but that PAC also provided Student a FAPE and operated as Student's current educational placement for stay-put purposes. ECF No. 10-7 at PageID.113–14. Defendants acknowledge that the AHO's decision to make Student's educational placement PAC was "supported by 8 pages of FOF and 4 pages of legal analysis." ECF No. 42 at PageID.1203. Still, they argue that the AHO needed to analyze how PAC was Student's LRE for it to be a valid placement. *Id.* Defendants do not, however, cite to any law to support this purported legal requirement. *Id.* Moreover, the AHO did address Defendants' restrictive environment arguments and ultimately considered the LRE in her 2020 Decision. ECF No. 10-7 at PageID.119. Accordingly, there is no violation on the record.

      Despite their failing legal arguments, Defendants make a compelling logical argument—but for Student unilaterally enrolling in PAC, there may not have been a procedural defect (failure to review, revise, and replace the IEP prior to its expiration) which resulted in the denial of a FAPE. *See* ECF 10-7 at

30

PageID.113.  And had there not been a denial of a FAPE, the AHO would have

never granted Plaintiffs' reimbursement of tuition at PAC for the 2020–2021 SY.

*Id.*  Further, had that reimbursement not been granted, Plaintiffs would likely not

have "stayed put" at the PAC, which cost Defendants—and by proxy, U.S.

taxpayers—$231,186.80 for the SY 2020–2021 alone.  ECF No. 10-7 at

PageID.99.  Due to this chain of events, DOE further asks that the court reverse the

July 2021 Stay-Put Order, finding the placement of PAC erroneous, because that

was not the educational institution ever selected by Student's IEP team for an offer

of a FAPE.

 Although Defendants' counterclaim has some logical merit, the AHO

correctly addressed Student's current educational placement and stated:

> Numerous courts have reviewed facts similar to this case,
> where parents unilaterally placed their child at a private
> school when they disputed the terms of the school
> district's offer of FAPE.   The U.S. Supreme Court
> determined that in cases where the parents receive a
> favorable decision from an administrative review agency
> or the courts, the agency or court's decision in the
> parents' favor would "seem to constitute an agreement by
> the State to the change in placement." *School
> Committee of the Town of Burlington v. Massachusetts
> Department of Education*, 471 U.S. 359, 372-373 (1985).
> This decision has been confirmed numerous times by
> various jurisdictions, including the Ninth Circuit Court of
> Appeals, such as in the [sic] *K.D. ex rel. C.L. v.
> Department of Educ., Hawai'i*, 665 F.3d at 1118, where
> the Court found:
>
> > a  post-placement  administrative  or  judicial

31

> decision can operate to define the "current
> educational placement" of a child.  Where a parent
> unilaterally changes the placement of a child, but a
> subsequent administrative or judicial decision
> confirms that the parental placement is
> appropriate, the decision 'constitute[s] an
> agreement by the State to the change of placement'
> and the placement becomes the 'current
> educational placement' for purposes of the stay put
> provision.

ECF No. 10-10 at PageID.237.  Accordingly, the AHO's 2020 Decision, ECF No.

10-7, confirmed that the "current educational placement" of Student was PAC and

continues to be so through today.  Though the court recognizes the propensity for

abuse by both parents and lawyers under the legal convention of stay-put, the court

finds that under the law, it cannot reverse the AHO's July 2021 Stay-Put Order.

//

//

//

//

//

//

//

//

//

//

# V. **CONCLUSION**

Accordingly, the court finds no legal error or abuse of discretion by the AHO in the proceedings below and upon de novo review of the legal arguments put forth by both Claimants (Plaintiffs) and Counterclaimants (Defendants), the court AFFIRMS both the AHO's July 2021 Stay-Put Order, ECF No. 10-10, and her November 2021 Findings of Fact and Conclusions of Law, ECF No. 10-24. The Clerk of Court is directed to CLOSE this case.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, March 29, 2023.



/s/ J. Michael Seabright
J. Michael Seabright
United States District Judge

*E.W. ex rel. L.W. v. D.O.E.* Civ. No. 22-00486 JMS-WRP, Order Affirming Administrative Hearings Officer's Stay-Put Order, and Findings of Fact and Conclusions of Law in DOE-SY2021-046